United States District Court
Middle District of Florida
Tampa Division

**RAYMOND THOMAS ROBERTS,**

***Plaintiff,***

**v.** **NO. 8:25-cv-1598-PDB**

**COMMISSIONER OF SOCIAL SECURITY,**

***Defendant.***

---

# Order

Proceeding under 42 U.S.C. § 405(g), the plaintiff requests judicial review of a final decision by the Commissioner of Social Security. Doc. 1. He raises four issues:

1. Whether the Administrative Law Judge (ALJ) erred in finding Plaintiff had past relevant work in Dictionary of Occupational Titles (DOT) # 299.687-010 and # 199.267-034 as they were composite and mischaracterized.

2. Whether the ALJ erred in failing to assess Plaintiff's mental impairments and to conduct the mandated psychiatric review technique.

3. Whether the ALJ improperly evaluated the opinion of Dr. Adrian Kochno, given that the ALJ neglected to address supportability and inadequately addressed consistency of that opinion with other evidence in the record.

4. Whether the ALJ erred in failing to find Plaintiff limited to sedentary or light work at most and circumvented the Medical-Vocational Guidelines (grids).

Doc. 15 at 1. The procedural history, evidence, and law are summarized in the ALJ's decision, Tr. 17–26, and the parties' briefs, Docs. 15, 19, 20, and not fully repeated here. The pertinent period is relatively brief: June 14, 2023, to July 3, 2024. Tr. 26.

## I. Scope of Review

Section 405(g) details the scope of review:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner …, with or without remanding the cause for a rehearing. The findings of the Commissioner … as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Commissioner … or a decision is rendered under subsection (b) of this section which is adverse to an individual who was a party to the hearing before the Commissioner …, because of failure of the [plaintiff] or such individual to submit proof in conformity with any regulation prescribed …, the court shall review only the question of conformity with such regulations and the validity of such regulations.

42 U.S.C. § 405(g).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoted authority omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019); *see also id.* at 108 (describing a case-by-case inquiry about vocational expert testimony that "defers to the presiding ALJ, who has seen the hearing up close").

## II. Disability and the Five-Step Process

To obtain benefits, a claimant must show that he is disabled. 20 C.F.R. § 404.1512(a)(1). A claimant is disabled if he cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Social Security Administration (SSA) uses a five-step sequential process to determine if a claimant is disabled. 20 C.F.R. § 404.1520(a)(4). At step one, the SSA asks whether the claimant is engaged in substantial gainful activity. *Id*. § 404.1520(a)(4)(i). At step two, the SSA asks whether the claimant has a severe impairment or combination of impairments. *Id.* § 404.1520(a)(4)(ii). At step three, the SSA asks whether the claimant has an impairment or combination of impairments meeting or medically equaling the severity of any impairment in the Listing of Impairments. *Id.* § 404.1520(a)(4)(iii). At step four, the SSA asks whether the claimant can perform any of his past relevant work, considering his residual functional capacity (RFC). *Id*. § 404.1520(a)(4)(iv). At step five, the SSA asks whether the claimant can adjust to other work considering his RFC, age, education, and work experience. *Id*. § 404.1520(a)(4)(v).

## III. Law & Analysis

### *A. First Argument*

The plaintiff argues that the ALJ erred in finding that he can perform past relevant work as a sales attendant and researcher. Doc. 15 at 7–14.

At step four, an ALJ must determine whether a claimant can perform any of his "past relevant work," considering his RFC. 20 C.F.R. § 404.1520(a)(4)(iv). "Past relevant work" is work that a claimant has done "within the past five years that was substantial gainful activity and that lasted long enough for [him] to learn to do it." *Id.* § 404.1560(b)(1)(i). The ALJ will ask the claimant for information about his past relevant work. *Id.* § 404.1560(b)(2). The ALJ may use a VE to obtain evidence for the finding. *Id.* A VE's testimony "concerning the physical and mental demands of a claimant's past relevant work, either as [he] actually performed it or as generally performed in the national economy[,] may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work." *Id.*

An ALJ also may use the DOT to obtain evidence needed for the past-relevant-work finding. *Id.* § 404.1560(b)(2). "[T]he DOT groups jobs into 'occupations' based on their similarities and defines the structure and content of all listed occupations." DOT, Parts of the Occupational Definition, 1991 WL 645965. "Occupational definitions are the result of comprehensive studies of how similar jobs are performed in establishments across the nation and are composites of data collected from diverse sources." *Id.* An occupational definition may include an alternate title, which is a synonym for the base title. *Id.*

To support a finding that a claimant can return to his past relevant work, an ALJ must (1) "consider all the duties of that work" and (2) "evaluate [the claimant's] ability to perform them in spite of his impairments." *Lucas v. Sullivan*, 918 F.2d 1567, 1574 n.3 (11th Cir. 1990). The claimant bears the burden of showing that he can no longer perform his past relevant work as he actually performed it, or as it is performed in the national economy. *Jackson v.*

*Bowen*, 801 F.2d 1291, 1293–94 (11th Cir. 1986) (rejecting a plaintiff's assertion that he could not specifically perform his past job, which required him to climb and descend stairs, because he failed to show that the position in general required climbing and descending stairs). "The regulations require that the claimant not be able to perform his past *kind* of work, not that he merely be unable to perform a specific job he held in the past." *Id.* at 1293.

Effective June 22, 2024, the SSA rescinded Social Security Ruling (SSR) 82-61 and replaced it with SSR 24-2p.[1] The new ruling explains how the SSA evaluates past relevant work:

> We determine whether an individual can perform their [past relevant work] by considering whether the individual retains the RFC to meet the functional demands of any of their [past relevant work] as they actually performed it or as it is generally performed in the national economy.
>
> When we determine whether an individual can perform their [past relevant work] as they actually performed it, we consider whether the individual retains the RFC to perform the particular functional demands peculiar to the work the individual did. ….

[1]SSR 24-2p applies under the following circumstances:

> [The agency] will use this SSR beginning on its applicable date. We will apply this SSR to new applications filed on or after the applicable date of the SSR and to claims that are pending on and after the applicable date. This means that we will use this SSR on and after its applicable date in any case in which we make a determination or decision. We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions. If a court reverses our final decision and remands a case for further administrative proceedings after the applicable date of this SSR, we will apply this SSR to the entire period at issue in the decision we make after the court's remand.

SSR 24-2p, 89 Fed. Reg. 48479, 2024 WL 3291790 (June 6, 2024). SSR 24-2p applies because the ALJ's July 3, 2024, decision followed the ruling's June 22, 2024, effective date. *See* Tr. 26.

> When we determine whether an individual can perform their [past relevant work] as it is generally performed in the national economy, we consider whether the individual retains the capacity to perform the occupation's functional demands as ordinarily required throughout the national economy.
>
> We may rely on descriptions of occupations from reliable sources of job information to determine how occupations are generally performed. A [VE] may also provide information about how an occupation is generally performed in the national economy.
>
> As actually performed, an individual's job may have involved functional demands that are different from those generally required for the occupation throughout the national economy. If the individual cannot meet the functional demands actually required in the former job but can meet the functional demands as generally required throughout the economy, we will find the individual able to perform [past relevant work] and not disabled.
>
> An individual is the primary source for information concerning their work history, but we consider all available evidence and information. Statements by the individual about their past work are generally sufficient for determining the skill level and physical and mental demands of such work. ….
>
> ….
>
> A determination or decision that an individual is not disabled, based on their ability to perform at least one job or occupation that is [past relevant work] at step four of the sequential evaluation process, must contain adequate rationale and findings.
>
> In finding that an individual has the capacity to perform [past relevant work], the determination or decision must:
>
> - establish the individual's RFC;
> - identify the [past relevant work] the individual can do;
> - consider the physical and mental demands of the [past relevant work] either as the individual actually performed the job or as the occupation is generally performed in the national economy; and

- find that the individual's RFC establishes capacity to perform the [past relevant work] either as the individual actually performed the job or as the occupation is generally performed in the national economy.

SSR 24-2p (numbering and questions omitted).

The analysis differs if a claimant's past relevant work qualifies as a "composite" job. A composite job has "significant elements of two or more occupations and as such, ha[s] no counterpart in the DOT." Program Operations Manual System (POMS) DI 25005.020(B). A claimant's past relevant work "may be a composite job if it takes multiple DOT occupations to locate the main duties" of the past relevant work as described by the claimant. *Id.* In comparing a claimant's RFC to a composite job as he actually performed it, an ALJ will "find the claimant capable of performing the composite job only if [he] can perform all parts of the job." *Id.* Because a composite job has no DOT counterpart, an ALJ does not evaluate the composite job as part of considering past relevant work "as generally performed in the national economy." *Id.*

In *Smith v. Commissioner of Social Security*, the Eleventh Circuit explained what a plaintiff must show to prove a job is a composite job. 743 F. App'x 951 (11th Cir. 2018). There, the plaintiff challenged a VE's classification of his job as a telephone clerk because he was required to hang rent notices, which was "a duty beyond the usual responsibilities of a telephone clerk." *Id.* at 952, 954. The Eleventh Circuit ruled that the plaintiff failed to meet his burden of proving the job was a composite job because he had not proved that hanging rent notices was a main duty of his position and had not "identified what other occupation listed in the DOT he contend[ed] that he was performing when he hung the rent notices." *Id.* at 954. The Eleventh Circuit therefore

concluded that the ALJ had not erred in finding that the plaintiff's work was not a composite job. *Id.*

In a May 2023 work-history report, the plaintiff identified three jobs: "pro shop golf staff," "security personnel," and "investigator/police officer." Tr. 230. He described his pro-shop-staff work in this way:

> Typically the pro shop tasks involve booking tee times (answering phone calls) and checking golfers in to golf, checking daily emails regarding golf groups or entering tee times into a golf system via computer. Periodically stock pro shop with golf apparel, golf balls, golf shoes or anything golf related, except equipment such as drivers and irons.

Tr. 231. He described his "investigator/police officer" work in this way:

> Investigated serious crimes such as homicides, child abuse, burglaries, rapes, etc.[,] conducted investigative reports and made arrest, based on the evidence or conclusion of case. A lot of report writing sitting behind a desk. Responded to numerous crime scenes. Years as a "road trooper" involved many hours of driving and traffic stops.

Tr. 233.

At the hearing, the plaintiff testified that he worked at a golf course as pro shop staff and performed these duties:

> I was pro shop staff, so I worked checking people in, scheduling tee times, ringing up golf apparel in the shop. So, I'm not saying clerical, but just mainly like a desk job for the pro shop for taking phone calls, multitasking, various golf related stuff in the pro shop.

Tr. 39. He testified that the heaviest weight he lifted in that job was "[p]robably golf balls[,] 30 pounds at the most." Tr. 39.

The VE classified the plaintiff's pro shop staff work as a "sales attendant":

> The pro shop staff I'm classifying as a sales attendant. The DOT code is 299.677-010. The exertional level is light, SVP 2, as per testimony, the work was actually performed at medium due to the lifting and carrying, to be performed with the golf balls and material.

Tr. 53.

The VE classified the plaintiff's police-investigator work as a "detective" and testified that the work "is always performed at heavy exertion due to the restraint and transfer of human body … that has to occur from time to time." Tr. 53. The plaintiff interjected and provided this clarification:

> I was a background investigator … at the New York State Police for ten and a half years. I transferred to a casino in Tioga County, which was Tioga Downs Casino. So, the last three and a half years before I retired in 2020, I had virtually no arrests or, really, interaction with the public because **I was strictly doing backgrounds** through the Gaming Commission with the New York State Police. So, the last three and a half years before I retired, essentially it was a desk job.

Tr. 53–54 (emphasis added). He further explained that the heaviest weight he lifted was "[p]robably [his] pen," and he "spent the majority of the day sitting behind a desk, typing reports." Tr. 55. He stated that the human resources department at the New York State Policing firm could confirm that that was his position before he retired. Tr. 54.

The VE observed that "doing the background checks is an entirely different DOT" than the detective job. Tr. 54. Based on the plaintiff's clarifying testimony, the VE classified his police-investigator job "as researcher … because [he was] checking through backgrounds. The DOT code is 199.267-034. The exertional level is sedentary, the SVP, 6." Tr. 55.

The ALJ asked the VE if the researcher job replaced the detective job, and the VE suggested using both. Tr. 55. The ALJ observed that, under a new rule, the plaintiff's work from the past five years is what is relevant.[2] Tr. 55–56. The VE stated that the detective job should be eliminated. Tr. 56. The ALJ asked the VE, "So, then research accurately captures the work [the plaintiff] did those past few years … as described?" The VE answered, "Yes." Tr. 56.

The VE testified that a hypothetical person with the plaintiff's medical, educational, and vocational profile, who had an RFC assessed like the plaintiff's, could perform the sales attendant and researcher jobs. Tr. 57. The plaintiff's lawyer questioned the VE only about the potential preclusion of work because of time off task and absences. Tr. 58.

In the written decision, the ALJ made this step-four finding:

> The [plaintiff] is capable of performing past relevant work as a sales attendant (DOT # 299.6<u>8</u>7-010, [sic] light as generally performed, medium as actually performed, SVP 2) and researcher (DOT # 199.267-034, sedentary as generally and actually performed, SVP 6). This work does not require the performance of work-related activities precluded by the [plaintiff]'s [RFC].

Tr. 25. The ALJ added that the VE classified the plaintiff's past relevant work as "sales attendant, DOT # 299.687-010, [sic] light as generally performed, medium as actually performed, **SVP 6** [sic]." *See* Tr. 25 (emphasis added); *compare* Tr. 25 (the ALJ's step-four finding), *with* Tr. 53 (the VE's testimony about the sales attendant occupation with DOT code 299.677-010 and SVP 2).

[2]Before the ALJ's decision, the regulation defining "past relevant work" was amended to reduce the relevant period from 15 years to five years. *See* 20 C.F.R. § 404.1560; SSR 24-2p.

The ALJ summarized the VE's testimony:

> At the hearing, I asked the [VE] if a hypothetical individual with the [plaintiff]'s age, education, work experience, and [RFC] could perform any of the [plaintiff]'s past work. The VE testified that such a hypothetical individual would be able to perform the [plaintiff]'s past work as sales attendant and researcher as the work was generally performed in the national economy. In comparing the [plaintiff]'s [RFC] with the physical and mental demands of this work, I find that the [plaintiff] is able to perform it was [sic] generally performed. The DOT does not specifically address aspects such as the differences between climbing ladders versus climbing ramps or stairs, or the degree of exposure to hazards.

Tr. 25–26. The ALJ found that the testimony was reliable and consistent with Social Security Ruling 00-4P because the VE based the testimony on her training, education, and experience. Tr. 26.

DOT code 299.677-010 is the "sales attendant" occupation, which requires a light exertional level and SVP 2, and includes the alternate titles "attendant, self-service store." DOT 299.677-010, 1991 WL 672643. The DOT provides this description of "sales attendant":

> Performs any combination of following duties to provide customer service in self-service store: Aids customers in locating merchandise. Answers questions from and provides information to customer about merchandise for sale. Obtains merchandise from stockroom when merchandise is not on floor. Arranges stock on shelves or racks in sales area. Directs or escorts customer to fitting or dressing rooms or to cashier. Keeps merchandise in order. Marks or tickets merchandise. Inventories stock.

DOT 299.677-010, 1991 WL 672643.

DOT code 299.687-010 is the "porter, sample case" occupation, which requires a medium exertional level and SVP 2. DOT 299.687-010, 1991 WL 672645.

The DOT provides this description of "research assistant II," with the alternate title "researcher":

> Analyzes verbal or statistical data to prepare reports and studies for use by professional workers in variety of areas, such as science, social science, law, medicine, or politics: Searches sources, such as reference works, literature, documents, newspapers, and statistical records, to obtain data on assigned subject. Analyzes and evaluates applicability of collected data. Prepares statistical tabulations, using calculator or computer. Writes reports or presents data in formats such as abstracts, bibliographies, graphs, or maps. May interview individuals to obtain data or draft correspondence to answer inquiries. May be designated Legislative Aide (government ser.) when conducting studies to assist lawmakers.

DOT 199.267-034, 1991 WL 671654.

Contrary to the plaintiff's arguments, the ALJ complied with the regulations in finding that the plaintiff can perform his past relevant work. The ALJ questioned the plaintiff about his former duties for each job. *See* Tr. 39 (sales attendant), Tr. 54 (researcher). Based on the plaintiff's descriptions, the VE classified his past relevant work as a sales attendant, *see* Tr. 53, and a researcher, *see* Tr. 55. The ALJ then evaluated the plaintiff's ability to perform the duties despite his impairments. *See* Tr. 56–57. The VE testified that a hypothetical person with the plaintiff's background and limitations could perform the plaintiff's past relevant work. *See* 57. The plaintiff, represented by counsel at the hearing, neither questioned the VE about her assessments nor objected to her classifications of the plaintiff's past relevant work. *See* Tr. 32–59. The VE's expertise provides substantial evidence to support reliance on her testimony that the plaintiff could perform his past relevant work.

The plaintiff complains that the ALJ incorrectly stated that "[t]he [VE] classified [his] past relevant work as sales attendant, DOT # 299.687-

010, … SVP **6**,” *see* Tr. 25 (emphasis added), when the VE actually testified about work as a sales attendant, DOT # 299.6**7**7-010, SVP **2**, *see* Tr. 53 (emphasis added). Doc. 15 at 7–8. The plaintiff fails to show reversible error. Although the ALJ misidentified the sales attendant occupation as having an SVP level 6 in one instance, he initially identified the correct SVP level 2, which matches the VE's testimony and the DOT. *See* Tr. 25, 53. The VE's testimony about the sales attendant occupation with the correct DOT code, the ALJ's use of the sales attendant title, and the ALJ's statement that the occupation requires light exertion, make clear that the ALJ was referencing the sales attendant occupation with DOT # 299.677-010, and not the "porter, sample case" occupation with DOT 299.687-010. *Compare* DOT 299.677-010, 1991 WL 672643 (describing the "sales attendant" occupation as requiring light exertion), *with* DOT 299.687-010, 1991 WL 672645 (describing the "porter, sample case" occupation as requiring medium exertion). Remand to correct a scrivener's error is unwarranted.

The plaintiff argues that work as a sales attendant cannot constitute past relevant work because "[t]he only work history report that mentions the golf pro shop job does not mention any sales activities." Doc. 15 at 8 (citing Tr. 231); Doc. 20 at 1. Continuing to rely on a work-history report, he asserts that he "did not perform work as a researcher." Doc. 20 at 2. The arguments are unpersuasive. The plaintiff relies too heavily on the term "sales" for the sales attendant occupation, which includes the alternate titles "attendant, self-service store." *See* DOT 299.677-010, 1991 WL 672643. And he disregards his hearing testimony describing his past relevant work with duties the VE found satisfied the sales attendant and researcher occupations. *See* Tr. 39 ("I was pro shop staff, so I worked checking people in, scheduling tee times, ringing up golf apparel in the shop[;] mainly like a desk job for the pro shop for

taking phone calls, multitasking, various golf related stuff in the pro shop."); Tr. 54 ("So, I was a background investigator[.] … I had virtually no arrests or, really, interaction with the public because I was strictly doing backgrounds through the Gaming Commission with the New York State Police. … [E]ssentially it was a desk job."). Again, neither the plaintiff nor his counsel objected to the VE's classification at the hearing.

The plaintiff argues that the ALJ erred by failing to recognize his past relevant work as composite jobs. Doc. 15 at 8. This argument is also unpersuasive. He fails to establish that the main duties of the jobs go beyond the DOT descriptions and fails to propose any other job in the DOT that he contends he was performing and that the ALJ should have considered. *See Smith v. Comm'r of Soc. Sec.*, F. App'x 951, 954 (11th Cir. 2018) ("Furthermore, Smith has not identified what other occupation listed in the DOT he contends that he was performing when he hung the rent notices."). Remand is unwarranted.

### *B. Second Argument*

The plaintiff argues that the ALJ erred by failing to determine whether he has a medically determinable mental impairment and failing to conduct the psychiatric review technique (PRT), despite the plaintiff's assessment of anxiety and depression and his lawyer's assertion in a pre-hearing brief that those impairments are severe. Doc. 15 at 14–19.

A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); 20 C.F.R. § 404.1521. A medically

determinable impairment "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. "Objective medical evidence means signs, laboratory findings, or both." *Id.* § 404.1502(f). "Signs means one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [a claimant's] statements (symptoms)." *Id.* § 404.1502(g). Examples of psychiatric signs are "abnormalities of behavior, mood, thought, memory, orientation, development, or perception," that "must also be shown by observable facts that can be medically described and evaluated." *Id.* The SSA will not use a claimant's "statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment[.]" *Id.*

The SSA uses a "special technique" to evaluate a mental impairment's severity. 20 C.F.R. § 404.1520a(a). Under the technique, an ALJ evaluates the claimant's "symptoms, signs, and laboratory findings" to assess whether he has a "medically determinable mental impairment." *Id.* § 404.1520a(b)(1); *see also id.* § 404.1521 (explaining the requirements for a medically determinable impairment). If the ALJ determines that the claimant has a medically determinable mental impairment, the ALJ "must specify the symptoms, signs, and laboratory findings" substantiating the impairment's presence and "document" the findings. *Id.* § 404.1520a(b)(1). After finding the existence of a medically determinable mental impairment, the ALJ rates the resulting "degree of functional limitation." *Id.* § 404.1520a(b)(2).

Use of the special technique is required if the claimant "has presented a colorable claim of mental impairment." *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005) (holding that when a claimant presents a colorable claim of mental impairment, an ALJ's failure to comply with the special technique

regulations requires remand). The Eleventh Circuit has suggested that the presentation of a colorable claim of mental impairment may be inferred from an ALJ's analysis and discussion of the plaintiff's evidence of mental impairment. *Mills v. Commissioner of Soc. Sec.*, 659 F. App'x 541, 542 (11th Cir. 2016). The Eleventh Circuit has also suggested that an ALJ has no duty to consider a claimant's impairment if the claimant, represented by counsel, did not allege he was disabled because of the impairment at the administrative hearing or when filing the claim. *Robinson v. Astrue*, 365 F. App'x 993, 995 (11th Cir. 2010); *Street v. Barnhart*, 133 F. App'x 621 (11th Cir. 2005) (same); *Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 778 (11th Cir. 2016) (ruling that a plaintiff's argument that the ALJ failed to consider evidence about his anxiety, depression, and other impairments was without merit because the claimant had not asserted that those complaints were disabling and had not included them in his application or amended application).

In his initial application, in response to the directions, "List all of the physical or mental conditions (including emotional or learning problems) that limit your ability to work[, and i]f you have cancer, please include the stage and type," the plaintiff listed: right hip replacement and stage 3 prostate cancer. Tr. 196. To the question, "Have you seen a doctor or other health care professional or received treatment at a hospital or clinic, or do you have a future appointment scheduled … [f]or any mental condition(s) (including emotional or learning problems)," the plaintiff answered, "No." Tr. 199.

In March 2023, the agency denied the plaintiff's claim at the initial level. Tr. 61–66. The state agency medical consultant found that the plaintiff had medically determinable impairments of malignant neoplasm of the prostate and osteoarthrosis and allied disorders. Tr. 63. The consultant did not perform

the psychiatric review technique, *see* Tr. 61–66, and no mental RFC was associated with the claim, Tr. 64.

In a May 2023 disability report, to the question, "Since you last told us about your medical conditions, do you have any new physical or mental conditions," the plaintiff answered, "Yes," and described "[l]imited ability such as walking, due to fatigue. **Slight depression** based on erectile dysfunction and overall health." Tr. 224 (emphasis added). He estimated that the conditions occurred in February 2023. Tr. 224. He reported that he had been treated for physical conditions. Tr. 224.

An October 2023 report of contact indicates that the plaintiff "declined to attend [a mental status examination] and said he's depressed due to ED." Tr. 245.

In early November 2023, Dr. Amy Griswold performed a consultative examination of the plaintiff. Tr. 494–504. Dr. Griswold observed that the plaintiff "is alleging disability due to hip replacement, prostate cancer, fatigue, muscle twitching, and dizziness." Tr. 500. She listed his problems as erectile dysfunction, history of right hip replacement, exposure to toxic chemicals, history of prostate cancer, occupational exposure to other air contaminants, gastroesophageal reflux disease, and degenerative joint disease. Tr. 500. For the neurological exam, she observed that the plaintiff presented no speech disturbance, confusion, or difficulty understanding speech; that he was not speaking or mumbling incoherently; and that he was oriented to time, place, and person. Tr. 502. For the psychiatric exam, she observed that the plaintiff's judgment was not impaired, his attitude was normal, he was euthymic, his mood was not depressed or anxious, his affect was normal, he was not tearful, and his insight was impaired. Tr. 502. Under "Assessment and Plan," Dr.

Griswold provided sixteen assessments, including, "Depression …: 11/07/2023, possible, [c]hronic, [u]nchanged, [k]nown to patient." Tr. 502.

In December 2023, the agency denied the plaintiff's claim on reconsideration. Tr. 68–74. The state agency medical consultant reviewed the reconsideration evidence, including Dr. Griswold's report. *See* Tr. 69. Under "Findings of Fact and Analysis of Evidence," the consultant observed the plaintiff's alleged changes in condition, including "**[s]light depression based on ED,"** and that he declined to attend a mental status examination. Tr. 70 (emphasis added). Like at the initial level, the consultant found that the plaintiff had two medically determinable physical impairments; the consultant did not perform the psychiatric review technique, and no mental RFC was associated with the claim. Tr. 72.

In January 2024, the plaintiff requested an evidentiary hearing before an ALJ. Tr. 95–96. In a disability report completed days later, to the question, "Since you last told us about your medical conditions, do you have any new physical or mental conditions," the plaintiff answered, "Yes," and stated, "**I've been depressed regarding ongoing erectile d[y]sfunction issues**. My current prognosis after the radical prostatectomy remains the same since the initial surgery during September 2021." Tr. 249 (emphasis added). He estimated that the conditions occurred in February 2023. Tr. 249. He reported that since his last report, he had been treated for, or had a future appointment scheduled for, physical conditions. Tr. 249.

In a brief dated the day before the administrative hearing, the plaintiff asserted, among other things, that he suffers from severe impairments of anxiety, depression, and fourteen physical impairments. Tr. 283. For anxiety, he cites a March 2022 progress note in which Dr. Nicole Foster assessed him

as having "anxiety about health," with the notation, "will monitor." Tr. 283; *see* Tr. 410, 580. For depression, he cites Dr. Griswold's November 2023 consultative examination noting "depression … possible[.]" Tr. 283; *see* Tr. 502.

At the administrative hearing, the ALJ asked the plaintiff, "[T]ell me specifically what keeps you from being able to work?" Tr. 42. The plaintiff, represented by counsel, discussed only his physical impairments:

> Well, my history dates back to 2021, the year after I retired. I was diagnosed with prostate cancer, biopsy, et cetera. I had a surgery for the prostate removal, September of 2021. So, going forward, I didn't have any initial symptoms other than my regular check ups every six months with my urologist here in Sarasota, Florida. And since he has—they put me on, you know, medication, for—like, Cialis for erectile dysfunction, et cetera, but it has slowly progressed, fatigue—and since—daily, I'm like dizzy. The fatigue comes and goes. It's periodically, but it's the point that I have fatigue, I really limit any activity that day. It progressed into nerve pain, and also the limited hip motion. Of course, I had a hip replacement—right hip replacement, September of 2018. Now, it was also documented with the 9/11 stuff, I had stomach GERD. And the GERD has come and gone, but I really haven't gone on any medication since about the GERD. But mainly, and I can't describe it, but I've been to a neurologist about the nerve pain as well as the fatigue. But if anything that—you know, that bothers me daily is the dizziness. I can't explain it, but it's present. So, again, the combination that has limited my activity on certain days, and again, it's not the only thing that has limited my activity, but enough that I have been dizzy and certain house chores—I limit my activity based on the flareup or how I feel from day to day. So, yeah, I don't want to be paranoid about my medication symptoms, but when the stuff does affect me, you know, I try and explain to my neurologist when I do see him. And you know, again, my wife—first, is an alarmist, and I don't want to, you know—obviously, I want to seek certain medical stuff, but since my cancer diagnosis and they are trying to be proactive about this stuff when I have these medical flareups.

Tr. 42–43. Neither the plaintiff nor his attorney raised anxiety, depression, or any other mental impairment as a reason that the plaintiff is unable to work. *See* Tr. 34–59 (hearing transcript).

At step two, the ALJ found that the plaintiff has severe impairments of status post prostate cancer, status post prostatectomy; cervical spondylosis; status post right hip replacement; osteoarthritis and allied disorders; and right carpal tunnel syndrome. Tr. 20. The ALJ found that the plaintiff's erectile dysfunction is non-severe. Tr. 20. The ALJ made no finding on whether the plaintiff has a medically determinable mental impairment. *See* Tr. 17–26.

Contrary to the plaintiff's argument, the ALJ committed no reversible error. The plaintiff fails to show that he presented a colorable claim of mental impairment to the ALJ. Counsel's assertion in a brief, without accompanying objective medical evidence supporting the existence of a medically determinable mental impairment, is insufficient. The notations of "anxiety about health" on which the plaintiff relies, *see* Doc. 15 at 14 (citing 405–07, 410, 580, 597, 627, 672), are more than a year outside the pertinent time period. Dr. Griswold's assessment of *possible* depression, *see* Tr. 502, is likewise insufficient. The SSA will not use a claimant's statement of symptoms or a diagnosis, much less a *possible* diagnosis, to establish the existence of an impairment. *See* 20 C.F.R. § 404.1521. And Dr. Griswold's examination findings included that the plaintiff's mood was "not depressed" and "not anxious." Tr. 502. At the reconsideration level, the state agency medical consultant found only medically determinable physical impairments. Tr. 70. And, at the hearing, the plaintiff testified only as to his physical impairments preventing him from working. *See* Tr. 42–43. Neither he nor his counsel raised

anxiety or depression as a reason he is unable to work. Remand is unwarranted.

### *C. Third Argument*

The plaintiff argues that the ALJ erred in evaluating Dr. Adrian Kochno's medical opinion by failing to address supportability and inadequately addressing consistency. Doc. 15 at 19–22.

An ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ will consider supportability, consistency, the relationship with the claimant, any specialization, and "other factors," including evidence that a medical source is familiar with the other evidence in the claim or understands the disability program's policies and evidentiary requirements. *Id.* § 404.1520c(c).

The most important factors are supportability and consistency, and the ALJ must explain how he considered them. *Id.* § 404.1520c(a), (b)(2). Supportability concerns the support provided by the source issuing the opinion: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). Consistency concerns a comparison with other items in the record: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and

nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

In March 2023, Dr. Kochno performed a consultative examination of the plaintiff. Tr. 433–38. Dr. Kochno observed normal tandem walking, normal heel walking, normal walking on toes, normal gait and station, and no assistive device. Tr. 439. Based on the examination, Dr. Kochno opined that the plaintiff has no limitations in sitting, standing, lifting, carrying, hearing, speaking, or performing work-related mental activities involving understanding and memory, sustained concentration and persistence, or social interaction and adaptation. Tr. 437. Dr. Kochno opined that the plaintiff "has limitations in walking and can walk frequently up to distances of 2 miles." Tr. 437.

The ALJ found that the plaintiff has the following RFC to perform medium work, with these additional limitations:

> [T]he [plaintiff] can frequently kneel, crouch, crawl, stoop, and balance. [He] can frequently climb ramps and stairs. [He] can never climb ladders, ropes, or scaffolds. [He] can frequently handle, finger, and feel with the dominant hand. [He] can frequently reach. [He] can never be exposed to unprotected heights or other hazards such as dangerous machinery.

Tr. 20–21.

The ALJ summarized Dr. Kochno's opinion:

> Consultative examination findings strongly support the [plaintiff]'s ability to perform work consistent with the [RFC] finding. For example, the [plaintiff] underwent a consultative examination performed by Adrian Kochno, DO on February 15, 2023. He complained of twitching in his bilateral legs and dizziness. Examination findings were grossly normal, including 5/5 strength in all extremities and a 5/5 dexterity skill. [H]e was able to get on and off the examination table without assistance. He performed normal

> tandem walking, normal heel walking, and normal walking on toes. He was able to squat and rise to 75 percent of expected range, limited by his right hip, with only mild difficulty. He demonstrated a normal gait and station. He did not use an assistive device for ambulation. Except for the bilateral hip flexion, internal rotation, and external rotation, his range of motion was grossly normal (Ex. 8F/1-6 [Tr. 433–38]).

Tr. 23.

The ALJ analyzed Dr. Kochno's opinion and findings:

> Dr. Ko[chn]o opined the [plaintiff] has no limitations in lifting and carrying (Ex. 8F/5 [Tr. 437]). I find this opinion generally unpersuasive. The record as a whole does reflect the [plaintiff] is subject to medium exertional limitations, a conclusion that is consistent with the state agency's findings at the initial level. (Ex. 8F/6 [Tr. 438]).

Tr. 24.

Contrary to the plaintiff's argument, the ALJ properly considered and explained the persuasiveness of Dr. Kochno's opinions, as shown in the excerpts above. The ALJ explained that Dr. Kochno's findings strongly supported the plaintiff's ability to work at the medium exertion level but also found that his opinion that the plaintiff had no lifting or carrying restrictions was inconsistent with the entire record, including the state agency's findings at the initial level. Tr. 24.

The plaintiff complains that the ALJ failed to mention Dr. Kochno's opinion that he has limitations in walking and asserts, "The ALJ was required to, but did not, reconcile the RFC with Dr. Kochno's opinion." Doc. 15 at 20. The plaintiff fails to explain how Dr. Kochno's opinion that he "can walk frequently up to distances of 2 miles," Tr. 437, is incompatible with the RFC or with his past relevant work as a researcher, which he described as "spen[ding]

the majority of the day sitting behind a desk, typing reports." Tr. 55. The plaintiff shows no reversible error.

### *D. Fourth Argument*

The plaintiff argues that the ALJ erred by failing to limit him to sedentary or light work. Doc. 15 at 23–25. Relying on his first issue (that the ALJ erred in finding he had past relevant work as a sales attendant and researcher), the plaintiff contends that reversal is warranted because, with a sedentary or light work exertional limitation, he would have been found disabled under Medical-Vocational Guideline rule 201.06 or 202.06. Doc. 15 at 23.

The Medical-Vocational Guidelines, referred to as the grids, allow an ALJ to consider vocational factors such as a person's age, education, and work experience. *Pupo v. Comm'r Soc. Sec. Admin.*, 17 F.4th 1054, 1061 (11th Cir. 2021). "The grids are comprised of a series of tables, referred to as rules, with each table corresponding to a different RFC (sedentary, light, medium)." *Id.* The grids "function like an equation, where the ALJ inputs various factors, and an outcome" of "disabled" or "not disabled" is generated. *Id.* The grids apply only at step five, after a determination that the claimant is unable to perform his past relevant work. *Id.*

The plaintiff's argument that the ALJ erred by failing to limit him to sedentary or light work is without merit. The ALJ thoroughly explained his reasons for limiting the plaintiff to medium work. *See* Tr. 23. The ALJ also explained why he found the limitation to light work at the reconsideration level and by Dr. Greenberg unpersuasive. *See* Tr. 24–25. Substantial evidence, including the administrative medical finding at the initial level limiting the

plaintiff to medium work, *see* Tr. 64, physical examination findings consistently within normal limits, *see* Tr. 24 (citing Tr. 423–26, 433–38, 496–503, 508–11, 676–78), and the plaintiff's activities (doing laundry, mowing the lawn at his own pace, shopping, driving a car, and working parttime after the alleged onset date), *see* Tr. 23 (citing Tr. 32–59, 213–20, 508–14), support the ALJ's findings.

The plaintiff's complaint about the ALJ's failure to find him disabled under the grids, *see* Doc. 15 at 23, is likewise without merit. As the Commissioner observes, because the ALJ found the plaintiff capable of performing his past relevant work, the grids are inapplicable. Doc. 19 at 14.

## IV. Conclusion

The Commissioner's final decision is **affirmed**. The clerk is **directed** to enter judgment for the Commissioner of Social Security and against Raymond Roberts and close the file.

**Ordered** in Jacksonville, Florida, on September 28, 2026.

Patricia D. Barksdale
*United States Magistrate Judge*